1  JENNIFER L. KELLY (CSB No. 193416)
   jkelly@fenwick.com
2  LIWEN A. MAH (CSB No. 239033)
   lmah@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA  94104
   Telephone:     415.875.2300
5  Facsimile:     415.281.1350

6  ERIC BALL (CSB No. 241327)
   eball@fenwick.com
7  KUNYU CHING (CSB No.   292616)
   kching@fenwick.com
8  FENWICK & WEST LLP
   Silicon Valley Center
9  801 California Street
   Mountain View, CA  94041
10 Telephone:     650.988.8500
   Facsimile:     650.938.5200

11

12 Attorneys for Plaintiff
   PEAK OYUN YAZILIM VE PAZARLAMA AS
13 d/b/a PEAK GAMES

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16

17 PEAK OYUN YAZILIM VE PAZARLAMA          Case No.: _____
   AS, a Turkey corporation, d/b/a PEAK GAMES,
18                                          **COMPLAINT FOR COPYRIGHT
                                            INFRINGEMENT**
19              Plaintiff,
                                            **DEMAND FOR JURY TRIAL**
20         v.

21 HASBRO, INC., a Rhode Island corporation, and
   BACKFLIP STUDIOS, LLC, a Delaware limited
22 liability company,

23              Defendants.

24

25         Plaintiff Peak Oyun Yazilim ve Pazarlama AS (doing business as Peak Games ("Peak"))

26 brings this action against Defendants Hasbro, Inc. ("Hasbro") and Backflip Studios, LLC

27 ("Backflip Studios"; collectively "Defendants") for copyright infringement and complains as

28 follows:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

1.        This action arises from Defendants' *My Little Pony: Puzzle Party* game that tramples on Peak's intellectual property rights in its own original and popular game, *Toy Blast*. Since it launched in the United States, *Toy Blast* has soared to become one of the highest rated and highest grossing mobile games, recently garnering a top average rating of 4.71 out of 5.00 by consumers. *Toy Blast* has attained the number 1 ranking for puzzle games in the Google Play store and a top-3 ranking in the iTunes App store.

2.        Aware of *Toy Blast*'s success, Hasbro and its 70%-owned game studio, Backflip Studios, set out to develop a clone, which they attempted to conceal by cloaking it under Hasbro's My Little Pony brand, with its pink and purple motif. Defendants released their thinly disguised version of *Toy Blast* in app stores worldwide on October 13, 2016, under the title *My Little Pony: Puzzle Party*. It was as immediately obvious to users as it was to Peak that the game is a re-skin of *Toy Blast*. Aside from the My Little Pony theme, the differences in Defendants' game are trivial. Indeed, the copying is so egregious that the tutorial in *My Little Pony: Puzzle Party* matches the *Toy Blast* tutorial step by step. *My Little Pony: Puzzle Party* also copies the *Toy Blast* original content and level designs that create unique challenges in the game experience. *My Little Pony: Puzzle Party* even copies the extensive collection of numerical scores that Peak carefully and creatively selected to allow players to experience a satisfying balance between challenges and achievements. Reproducing these quirky scores verbatim (such as 1,080 and 1,760 and 2,160) shows the depths to which Defendants simply copied instead of innovated.

3.        Google Play reviewers have observed that *My Little Pony: Puzzle Party* is "Toy Blast but with ponies" and "[j]ust like Toy Blast, but with MLP characters." What is obvious to both players and reviewers alike is that Defendants' copying went far beyond taking elements that are commonplace among mobile games in the puzzle genre. Rather than invest resources to create a novel and original game experience, Defendants took the shortcut of cloning a leading game in the genre to steal a share of the market. Despite the string of *My Little Pony: Puzzle Party* reviews acknowledging the similarities to *Toy Blast*, Defendants' game threatens to poach Peak's customers because it is substantially the same puzzle game as *Toy Blast*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.      Hasbro, which spurred the production and release of *My Little Pony: Puzzle Party*, should know better. It has attacked others for the same sort of infringement that it has committed here. As the owner of the North American rights to the game *Scrabble*, in 2008 Hasbro famously sued the producer of online games *Scrabulous, Wordscraper*, and *Lexulous*, which Hasbro claimed infringed the copyright in essential and original elements of *Scrabble*. Among other things, Hasbro bristled at the fact that *Scrabulous* copied "the identical pattern, colors and award values of bonus squares" on the *Scrabble* game board, as well as the *Scrabble* game tiles. Hasbro alleged that *Wordscraper*'s "letter tiles are identical in point value to the letter tiles in the SCRABBLE® crossword game," and that players in each game experience the same distribution and numerical limits of tiles.  Hasbro is now engaging in the same type of "deliberate, willful and . . . utter disregard" of copyright of which it accused *Scrabulous*'s maker. That Hasbro would now, years later, copy someone else's prized intellectual property—instead of ponying up the resources to build something truly original—is a rather stunning turn.

5.      By this action, Peak seeks to halt Defendants' illegal free-riding, recover the losses it has suffered and will continue to suffer every day that *My Little Pony: Puzzle Party* remains on the market, and rein in the illegal profits Defendants have made from their unlawful infringement.

### NATURE OF THE ACTION

6.      Since its founding in 2010, Peak has developed a global reputation for creating and offering innovative, original, and highly engaging online games. In addition to *Toy Blast*, some of Peak's major successes include *Spades Plus*, *Gin Rummy Plus*, and *101 Okey Plus*. By 2012, Peak had become the third largest social game publisher worldwide, with over 29 million monthly active users. Over 275 million users have installed a game from Peak. But Peak's aim is not merely to entice users to download a game. Through careful attention to the aesthetics, puzzles, bonuses, and rewards that a user experiences, Peak seeks to design delightful games that captivate users and make them want to keep playing.

7.      In addition to quality entertainment, Peak's business model also depends on attracting and keeping a large population of active players. Like many of its competitors, Peak relies on a free-to-play business model with optional in-game purchases for premium features or

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

virtual goods (a "freemium" model). Players can download *Toy Blast* for free and either play it for free, or purchase in-game currency that they can exchange for extra lives or boosters to make solving the puzzles easier in some way. Accordingly, Peak's financial success depends on its ability to offer compelling, unique games with options for in-game purchases that players value.

8.　　*Toy Blast* is a "collapse" puzzle game that features stacks of colored cubes and obstacles on a variety of distinctively configured game boards. When a player selects sets of contiguous cubes of the same color, they "collapse," and other cubes of various colors fall onto the board to replace the original cubes and any cleared obstacles. Collapsing sets of cubes is not necessarily the end goal in itself. Rather, the goal for a particular game board and level may be to



move "toy" objects from one side of the board to another, generate points and "toy" bonuses by collapsing larger sets of cubes, or collapsing cubes in a way that eliminates nearby obstacles such as toy beach balls. For example, in the illustration to the right, the player has up to 28 collapse moves to eliminate the 25 beach balls and collapse at least 16 red cubes. The beach balls are eliminated by adjacent collapses of colored cubes, so the player must figure out how to get same-color cubes to congregate contiguously next to the beach ball obstacles. Other toys pictured at the bottom represent limited numbers of boosters that have special powers to eliminate certain types of cubes or obstacles on the board.

9.　　*Toy Blast* has succeeded largely because of the creativity that Peak put into the unique gameplay and design, a variety of toys and ever changing goals, and a thoughtful combination of obstacles, rewards, and numerical points to keep players mesmerized instead of bored or overly frustrated.

10.　　Satisfying users in the long term requires continuous development of new, original levels and game boards, goals, and challenges. Peak has a creative team dedicated to creating

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

updated content and level creation. At launch, *Toy Blast* had 150 levels, but now it has over 1,000 levels that are completely unique and different from one another. In fact, approximately every two weeks, users can download a *Toy Blast* update that includes 20 new levels and boards.

11.     After creating *Toy Blast*, Peak made it available on Google Play, the iTunes App Store, and the Amazon Appstore. By 2015, *Toy Blast* went viral in popularity despite limited active promotion by Peak. *Toy Blast* became the fastest growing puzzle game in the U.S. market. While it was typically among the top-100 most downloaded mobile puzzle games in the U.S. in most of 2015, in recent months it typically has been in the top 10 in that category. Several tens of millions of users have downloaded *Toy Blast.* Among the highest grossing mobile puzzle games in the U.S., *Toy Blast* has attained the number 1 ranking in the Google Play store and a top-3 ranking in the iTunes App store.

12.     Reviewers have also raved about the creative design elements in *Toy Blast*, as the following examples show:

- "Lots of matches and unique features to keep your mind thinking. Nice variety of challenges and boards to play."

- "They've combined fun, difficulty, and creativity to make a great game. The levels aren't impossible but rather they creatively came up with new challenges instead of just making the levels impossible to pass. Thankful for the creative minds that made this game."

- "Lots of different boards not all the same keeps you wanting to play"

- "Toy Blast puts its own unique spin on a match-3 game that makes it really fun to play. The graphics are great as is the animation and the game play is as smooth as a baby's bottom."

- "I'm a big connoisseur of puzzle games and this one brings enough new to the table combined with enjoyable visuals to keep you coming back. The items are creative and the clearing block dynamic instead of the commonplace match 3 interface makes your brain think in a whole new set of ways."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- "Love this game! Fun and addicting to play. When I run out of lives, I can't wait for them to replenish so I can play some more. I love how each level is different and there are different challenges to complete the levels. It really keeps your mind working and trying to solve the puzzle in the amount of moves your allowed."

- "I'm bored with the other matching games, this game offers many changes and different boards. Love it.!!!!!!!!!!"

- "I rarely like matching games, but this one has really good graphics and different boards in every stage. I really love this app and must say, it's definitely one of my favs!"

- "Very Challenging Each level is unique and different in its own way. Love the challenge of solving each with balls, characters, and boosts. Thanks"

13.     *Toy Blast* features a unique game experience, visual narrative, user interactions, sequence and flow, layout, and overall look and feel, all of which are protected by copyright. Defendants copied virtually all of these protectable elements. Other than adding a pony theme, *My Little Pony: Puzzle Party* incorporates the same gameplay with numerous expressive elements stolen from *Toy Blast*.  This includes, among other things, the appearance, style, sequence, action, presentation, text and/or flow of (1) the tutorial; (2) in-game play screens; (3) the level objective and completion screens; and (4) expressions of how to reward players for block collapses and other successes.

14.     Defendants are purposefully aiming for the players that are or would be attracted to *Toy Blast*. Defendants released *My Little Pony: Puzzle Party* on the platforms where *Toy Blast* became popular, including the iTunes App Store and Google Play, which are the two distribution channels by which Peak generates the significant majority of its *Toy Blast* revenues. The presence of Defendants' infringing clone game in the market threatens Peak by reducing the number of *Toy Blast* players or the time that existing players spend playing *Toy Blast.* These reductions divert the revenue Peak otherwise would receive from those players' in-game purchases.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## PARTIES

15.     Peak is a Turkish corporation with a subsidiary office in San Francisco, California and headquarters in Istanbul, Turkey.

16.     Hasbro, Inc. ("Hasbro") is a Rhode Island corporation with offices in California and Pawtucket, Rhode Island, among other locations. Hasbro manufactures and markets toys, games, and puzzles. Among Hasbro's franchises is My Little Pony, which includes pony characters marketed to children. For example, the Applejack pony is supposed to represent honesty.

17.     Backflip Studios, LLC ("Backflip") is a Delaware limited liability company that is 70% owned by Hasbro. Backflip has offices in Boulder, Colorado. Backflip claims it "publishes absurdly fun mobile games for iOS and Android devices."

18.     Defendants market, distribute, and display their games, including *My Little Pony: Puzzle Party*, in the United States and throughout this District.  In particular, Defendants distribute *My Little Pony: Puzzle Party* on the Google Play and iTunes platforms run by companies that reside in this District, Google and Apple, respectively. Defendants have also promoted *My Little Pony: Puzzle Party* through their My Little Pony and *My Little Pony: Puzzle Party* pages on Facebook, which resides in this District.

## JURISDICTION AND VENUE

19.     Peak brings this action pursuant to the Copyright Act, including 17 U.S.C. §§ 106 and 501.

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

21.     This Court has personal jurisdiction and venue is proper in this District under 28 U.S.C. § 1391, because Defendants' infringing game is marketed, distributed, and/or displayed within this District, through platform companies that are located here, including Apple, Google and Facebook, and because Defendants directed its infringing game at California and California consumers while knowing that Peak would suffer injury in California from Defendants' infringement. Defendants have intentionally availed themselves of the privilege of conducting

Fenwick & West LLP
Attorneys at Law
San Francisco

business in this state and District, have purposefully directed activity at this state and District, and have established sufficient minimum contacts with this state and District such that they can reasonably and fairly anticipate being haled into this Court.

## INTRADISTRICT ASSIGNMENT

22.     This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c).

## DEFENDANTS' COPYING OF *TOY BLAST*

23.     Defendants made a game that looks, feels, and plays just like *Toy Blast* because it incorporates *Toy Blast*'s protectable and distinctive elements. Among other things, Defendants copied *Toy Blast*'s tutorial, core gameplay (including animation and treatment of block collapses, types of quirky obstacles, and the nature of bonus features that help clear blocks), level and game board design and configuration, level information screens, and in-game point economy. The five categories described below (which do not embrace all of the elements of *Toy Blast* that Defendants copied) illustrate the breadth and extent of Defendants' copying and stealing from *Toy Blast*. Just as a crossword game can have an infinite number of possible letter permutations, award values, and game board designs, the expressive choices that Peak made in *Toy Blast* are in no way dictated by the genre of puzzle games, their rules, or functional considerations. Peak creatively designed a unique combination of pieces, bonuses, point rewards, layouts, and game play that was original. Defendants could have done likewise but instead chose to copy *Toy Blast*'s original elements wholesale.

**(1)     Similarity of Tutorials**

24.     *My Little Pony: Puzzle Party*'s blatant copying of *Toy Blast* is obvious from the moment a player starts the game. Each game immediately directs the player into an opening tutorial. Peak developed the tutorial and the first six levels of *Toy Blast* from scratch, with a variety of creative choices aimed at leading the new player into a distinctively fun game experience. *My Little Pony: Puzzle Party* copies the appearance, presentation, and sequence of *Toy Blast*'s tutorial almost entirely.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.   *Toy Blast*'s tutorial goes through ten steps throughout the same first six levels of the game to introduce the player to the core gameplay. *My Little Pony: Puzzle Party* copies these steps in the same sequence, as the table below shows:

| Step | *Toy Blast* Tutorial Sequence: | *My Little Pony: Puzzle Party* Tutorial Sequence: |
|---|---|---|
| 1<br><br>(Level 1) | Show how to collapse/collect adjacent cubes of a matching color.<br><br> | Show how to collapse/collect adjacent cubes of a matching color.<br><br> |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| 2 (Level 1) | Highlight goal of collecting 10 blocks of one color and 2 of the other and instruct the player to continue until completion of the goal within 14 more moves.  | Highlight goal of collecting 10 blocks of one color and 2 of the other and instruct the player to continue until completion of the goal within 14 more moves.  |
| --- | --- | --- |
| 3 (Level 2) | Show bonus booster for matching 5 cubes.  | Show bonus booster for matching 5 cubes.  |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| 4 (Level 2) | Show that effect of the 5-cube bonus booster, when activated by tapping it, is to clear an entire row or column. | Show that effect of the 5-cube bonus booster, when activated by tapping it, is to clear an entire row or column. |
|---|---|---|
| |  |  |
| 5 (Level 3) | Show bonus booster for matching 7 cubes (*e.g.*, 2×3 with 1 on top). | Show bonus booster for matching 7 cubes (*e.g.*, 2×3 with 1 on top). |
| |  |  |

| 6 (Level 3) | Show that effect of the 7-cube bonus booster, when activated by tapping it, is to clear surrounding cubes in 3×3 area. | Show that effect of the 7-cube bonus booster, when activated by tapping it, is to clear surrounding cubes in 3×3 area. |
|---|---|---|
| |  |  |
| 7 (Level 4) | Show bonus booster for matching 9 cubes. | Show bonus booster for matching 9 cubes. |
| |  |  |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| 8 (Level 4) | Show that effect of the 9-cube bonus booster, when activated by tapping it, is to collect all cubes of the color shown.  | Show that effect of the 9-cube bonus booster, when activated by tapping it, is to collect all cubes of the color shown.  |
| --- | --- | --- |
| 9 (Level 5) | Instruct player to make a "combo" of the 5-cube and 9-cube bonus boosters, converting all cubes of the same color on the screen into the 5-cube booster.  | Instruct player to make a "combo" of the 5-cube and 9-cube bonus boosters, converting all cubes of the same color on the screen into the 5-cube booster.  |

| 10 (Level 6) | Introduce goal of bringing two objects from top to bottom by eliminating the cubes underneath within 20 moves. | Introduce goal of bringing two objects from top to bottom by eliminating the cubes underneath within 20 moves. |
| --- | --- | --- |
| |  |  |

26. Most of *My Little Pony: Puzzle Party*'s tutorial screens also closely resemble *Toy Blast*'s corresponding tutorial screens and involve similar text and goals. For example, steps 2 and 10 display the text instructions in a rounded rectangle superimposed on the game board, with a green button that says "Continue," in white text, underneath the rounded rectangle. The other steps, however, show the tutorial text without the green "Continue" button. Levels 1 through 3 require removal of minimum quantities of two different colors of cubes. Level 4 requires removal of minimum quantities of three different colors of cubes. The last tutorial level requires no minimum quantity of cubes, but instead requires that the player eliminate cubes underneath each of two special objects that start on the top of the left and right sides of the game board.

**(2)    Similarity of Gameplay Elements**

27. *My Little Pony: Puzzle Party* also copies unique and distinctive elements of the gameplay of *Toy Blast*. Upon clearing a set of contiguous cubes, the player sees them replaced with additional cubes that fall from the top. Because Peak chose to have cubes refresh the game board in this way, players are motivated to play with certain strategies in mind. The player might

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

choose to eliminate favorable sets of contiguous cubes at the top first, because eliminating sets of cubes at the bottom first might upset the arrangement of cubes at the top. On the other hand, eliminating cubes at the bottom can cause a favorable rearrangement of the cubes on top. The combination of Peak's manner of cube replenishment with the particular arrangements of game board shapes and obstacle configurations is original to *Toy Blast.* Defendants could have chosen any number of other methods of filling in and replenishing the game boards instead of copying *Toy Blast.*

28.     As the tutorials show, each game awards the same type of bonus boosters, with the identical effects, for collecting certain numbers of contiguous cubes at one time. These boosters greatly enhance the way that players experience the game, far beyond the commonplace puzzle game objective of matching adjacent blocks of the same color. Although a player in both games can remove as few as two contiguous blocks at a time, it is often more strategic to eliminate larger sets, such as five at a time or nine at a time in order to get a certain type of bonus booster. The availability and limits of those boosters, in combination with the limited number of moves allowed for most levels, affects how a user plays a given level. These creative choices about how game play progresses were original to *Toy Blast*.

| *Toy Blast* Booster Effects | *My Little Pony:  Puzzle Party* Booster Effects |
|---|---|
| 5- or 6-cube booster removes all cubes in a vertical or horizontal line | Same |
| 7- or 8-cube explosive booster removes surrounding cubes in a 3 × 3 area | Same |
| 9-cube (or more) booster removes all cubes of the designated color on the board | Same |
| Adjacent combination of two line-clearing boosters removes all cubes in both vertical and horizontal lines simultaneously. | Same |
| Adjacent combination of line-clearing booster and explosive booster removes all cubes in a 3-cube-wide row and column simultaneously | Same |

| *Toy Blast* Booster Effects | *My Little Pony: Puzzle Party* Booster Effects |
|---|---|
| Adjacent combination of line-clearing booster and 9-cube booster converts all cubes of the designated color on the board into line-clearing boosters | Same |
| Adjacent combination of two explosive boosters removes all surrounding cubes in a large square area | Same |
| Adjacent combination of explosive booster and 9-cube booster converts all cubes of the designated color on the board into explosive boosters | Same |
| Adjacent combination of two 9-cube boosters removes all cubes on the board | Same |

29.     Like *Toy Blast*, *My Little Pony: Puzzle Party* also offers special boosters that a user can buy with in-game currency. In both games, these special boosters appear at the bottom of the screen below the game board. Defendants chose to copy the same assortment of these special booster effects:

- Remove any single cube or obstacle on the game board
- Remove all cubes in any row that the player chooses
- Remove all cubes in any column that the player chooses
- Remove all cubes of a single color that the player chooses on the game board
- Change the color of a single cube that the player chooses

30.     The color cubes in each game are not a single, uniformly matte tint. Instead, Defendants copied the way that Peak expressed the cubes. Each cube appears with rounded corners and edges, and some parts are lighter in color. The cube appears from a perspective as though the player is viewing it not straight on, but from slightly above, with part of the upper surface visible. However, the user predominantly sees the front face of the cube. In addition, the front face of the cube (and apparently no other faces of the cube) always has some type of embossed design, with symbols unique to each color of cube.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Toy Blast* Example of Cube Appearance | *My Little Pony: Puzzle Party* Example of Cube Appearance |
|---|---|
|  |  |

31.     Defendants had no reason to implement these exact elements of *Toy Blast*, right down to their similar appearance and behavior, other than that they wanted to offer the same user experience as Peak.

**(3)     Level and Game Board Design and Configuration**

32.     Because of the way that Peak chose for cubes to replenish the game board, the dimensions and shape of the game board, as well as the configuration of obstacles on the game board, have a profound effect on how a user experiences a given level and board. Peak carefully created and selected these level and board designs to make the play both aesthetically pleasing and fun. Defendants could have chosen from an infinite number of possible dimensions, shapes, and configurations but instead opted to clone *Toy Blast*. While the icons representing the obstacles may differ, their placement, the game boards, and the game play are similar. Moreover, Defendants blatantly copied designs from not only the initial 150 *Toy Blast* levels, but also from subsequent levels that Peak added over time through content updates. A handful of the many examples are in the table below:

| *Toy Blast* Example of Game Board and Configuration to Start a Level | *My Little Pony: Puzzle Party* Example of Game Board and Configuration to Start a Level |
|---|---|
|  | Goal to remove 40 obstacles shown in the same configuration as in *Toy Blast*  |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Toy Blast* Example of Game Board and Configuration to Start a Level | *My Little Pony: Puzzle Party* Example of Game Board and Configuration to Start a Level |
|---|---|
|  |  |
|  | Objects to be removed are in the same starting places as in *Toy Blast*  |
|  |  |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Toy Blast* Example of Game Board and Configuration to Start a Level | *My Little Pony: Puzzle Party* Example of Game Board and Configuration to Start a Level |
|---|---|
|  |  |
|  |  |
|  |  |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| *Toy Blast* Example of Game Board and Configuration to Start a Level | *My Little Pony: Puzzle Party* Example of Game Board and Configuration to Start a Level |
|---|---|
|  |  |

**(4)**    **Level Information Screens**

33.    Defendants copied *Toy Blast*'s screens that express, in a cheery and distinctive manner, the set-up, goals, and results of a particular level. As with the board layouts, Defendants could have chosen from among an infinite number of arrangements of displaying information about the level, the scores, goals, available special boosters, and controls. But instead, Defendants chose to make their game look like Peak's. The layout, style, and feel of *My Little Pony: Puzzle Party*'s screens are nearly identical to *Toy Blast*'s.

34.    For example, right after a level loads, Peak chose to remind the player of the goals for the level. To do so, *Toy Blast* displays a horizontal, blue-bordered banner. On the left is a picture of a game character, while the pictorial reminder of the goals for the level appears on the right side. Defendants copied this same scheme, in timing, content, and visual appearance.

| *Toy Blast* Example of Level Goal Banner | *My Little Pony: Puzzle Party* Example of Level Goal Banner |
|---|---|
|  |  |

35.     The information displayed within a level also appears the same in *Toy Blast* and *My Little Pony: Puzzle Party.* When the player views either game vertically on a device screen, the game board is in the center. At the bottom in each game are slots for special boosters (which are depicted as keyed padlocks until the player has reached a high enough level to unlock them). At the top is a horizontal frame that is remarkably similar in both games. Peak chose to show a game character poking her head out of what appears to be a hole in the center of the frame while looking at the player. To the left, Peak chose to show a Goal area, with that level's goals depicted pictorially instead of in text. On the right side of the frame, Peak chose to show the number of available moves in big white digits within a rounded rectangle. Immediately below that is a point indicator, which Peak chose to show as a horizontal bar that fills up from left to right as the player accumulates points. Peak also chose to award the player up to three gold stars for successful

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

completion of the level, depending on attainment of certain point thresholds that are marked by vertical lines on the horizontal bar.

36.     The similarity remains if the player views the game on a device horizontally. The game board remains in the center. The special booster slots appear on the far right edge. The character, Goal area, move count, and point indicator appear in that order from top to bottom in a vertical frame on the left side of the display.

| *Toy Blast* Level Information Display | *My Little Pony: Puzzle Party* Level Information Display |
|---|---|
| When device is vertical | When device is vertical |
| When device is horizontal | When device is horizontal |
|  |  |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

37.     While Defendants re-skinned these screens with a pony theme, more pink and purple colors, and different background scenery, that superficial alteration cannot hide their comprehensive copying of how Peak chose to express and display the level information and characters throughout *Toy Blast*.

**(5)     In-game Point Economy**

38.     In *Toy Blast*, collapsing or collecting certain quantities of cubes or other items results in a numerical award of points. Peak's selection of point values was neither random nor driven by functional or other requirements. Instead, Peak thoughtfully created the assortment of point values while it was developing *Toy Blast*. Peak knew that delicately balancing the player's sense of reward against the difficulty of achieving certain cube-clearing tasks was critical to keeping the player engaged and entertained. Most puzzle games are unsuccessful because the art of setting the right levels of rewards is not easy.

39.     Hasbro should have known that copying the unique, non-functional scoring system of *Toy Blast* crosses the line. In suing the maker of *Scrabulous*, it recognized the importance of an original set of award values and point values to how successful and entertaining a game is. Yet Defendants copied nearly the entire point economy of *Toy Blast*, rather than doing the difficult and risky work of developing their own point values to express how well a player has done.

40.     The point values that Peak chose, especially in the aggregate, are unusual quantities. They are not obvious, round numbers such as 1,000 and 5,000. Among the values that Peak chose for matching increasing numbers of cubes were 80, 200, 360, 800, 1080, 1400, 1760, 2160, 2600, 3080, 3600, 4160, 4160, and 4760.  For example, activating the explosive booster in either game to clear a 3×3 area results in a point award of 1760. The fact that Defendants copied Peak's unusual assortment of point values demonstrates the extent of their slavish cloning of *Toy Blast*. Defendants had no need to copy this point economy except to try to mimic *Toy Blast*'s success.

41.     For these and all the reasons stated above, the similarities described above are not merely the result of two games existing in the same genre. They result from Defendants' willful and brazen infringement of *Toy Blast*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## **FIRST CAUSE OF ACTION**

### **(Federal Copyright Infringement)**

42.     Peak repeats, realleges, and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth herein.

43.     Peak's *Toy Blast* is an original and creative expressive work that constitutes copyrightable subject matter under 17 U.S.C. § 101 *et seq.*  Peak has owned all rights and privileges for this work at all relevant times.  Peak has copyright registrations from the United States Registrar of Copyrights for various versions of *Toy Blast*, Registration Nos. PA 2-004-191 and PA 2-004-192.

44.     Defendants had access to *Toy Blast* by virtue of its widespread popularity and distribution via various platforms all over the world and in the United States, where Defendants are located.

45.     Defendants copied substantial original elements of *Toy Blast*.

46.     The original elements of *Toy Blast* that Defendants copied were and are copyrightable subject matter, owned by Peak.

47.     By its actions described above, Defendants have infringed and continue to infringe Peak's copyrights by, without limitation, copying, publicly displaying, and distributing *My Little Pony: Puzzle Party*, without authorization from Peak.

48.     Defendants' infringement has been deliberate, willful, and in utter disregard of Peak's rights.

49.     Defendants have realized unjust profits, gains, and advantages as a proximate result of its infringement. These gains are ongoing as the infringement continues. Defendants have the right and ability to control the infringing conduct including the ability to determine its own conduct, and Defendants receive revenue attributable to *My Little Pony: Puzzle Party*. This revenue is a direct financial benefit to Defendants. Defendants have also intentionally induced, encouraged, caused, and materially contributed to the infringement of *Toy Blast.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

50.     As a direct and proximate result of Defendants' infringement, Peak has suffered, and will continue to suffer, actual damages. Peak is entitled to its actual damages and any gains, profits, and advantages Defendants obtained through infringement.

51.     Peak has no adequate remedy at law for its current and prospective injuries. Defendants' continued wrongful conduct will cause Peak irreparable injury that cannot be adequately remedied at law unless the court enjoins Defendants from further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Peak respectfully requests that this Court enter judgment in its favor against Defendants and grant the following relief:

1.     A preliminary and/or permanent injunction restraining Defendants, and their agents, servants, employees, attorneys, successors and assigns, and all persons, firms, and corporations acting in concert with them, from directly or indirectly violating Peak's rights under the Copyright Act;

2.     An order directing that Defendants file with the Court within thirty (30) days after entry of such order or judgment a report in writing and under oath setting forth in detail the manner and form in which Defendants has complied with the injunction;

3.     An award to Peak of damages it has sustained or will sustain by reason of Defendants' conduct and all profits derived by Defendants from such conduct;

4.     Peak's costs of suit;

5.     Prejudgment and post-judgment interest; and

6.     All such further and additional relief, in law or in equity, to which Peak may be entitled or which the Court deems just and proper.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Dated:    October 21, 2016                    FENWICK & WEST LLP


                                              By: *s/ Jennifer L. Kelly*
                                                  Jennifer L. Kelly (CSB No. 193416)
                                                  jkelly@fenwick.com
                                                  FENWICK & WEST LLP

                                                  Attorneys for Plaintiff
                                                  PEAK OYUN YAZILIM VE PAZARLAMA
                                                  AS d/b/a PEAK GAMES

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## DEMAND FOR JURY TRIAL

2

Peak hereby demands trial by jury on all issues and claims so triable.

3

Dated:    October 21, 2016                    Respectfully Submitted,

4

5

By: *s/Jennifer L. Kelly*
      Jennifer L. Kelly

6

Attorneys for Plaintiff
PEAK OYUN YAZILIM VE PAZARLAMA AS
d/b/a PEAK GAMES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO